IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Beverly S. Bobb,                          :
               Plaintiff            :      Civil Action 2:10-cv-00422

    v.                                   :      Judge Frost

Michael J. Astrue,                        :      Magistrate Judge Abel
Commissioner of Social Security,
              Defendant            :

## REPORT AND RECOMMENDATION

Plaintiff Beverly S. Bobb brings this action under 42 U.S.C. §§405(g) and 1383(c) for review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income benefits.  This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**<u>Summary of Issues.</u>**

Plaintiff Beverly Bobb, a high school graduate who completed two years of college, alleges that she became disabled at age 47 by diabetes, asthma, arthritis, hypertension, congestive heart failure, migraines, and depression. Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge erred when he concluded that plaintiff had the residual functional capacity to perform light work because he failed to credit the opinions of Dr. Klein and Dr. Delbert; and,

- The administrative law judge erred when he concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of symptoms were not entirely credible.

**Procedural History.**  Plaintiff Beverly S. Bobb filed her application for disability insurance benefits on April 16, 2004, alleging that she became disabled on May 1, 2003, at age 47, by diabetes, asthma, arthritis, hypertension, congestive heart failure, migraines, and depression.  (R. 89, 80.)  The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge. On September 18, 2007, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (R. 536.)  A vocational expert also testified.  On January 14, 2008, the administrative law judge issued a decision finding that Bobb was not disabled within the meaning of the Act.  (R. 32.)  On April 19, 2010, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 5-7.)

**Age, Education, and Work Experience.**  Beverly S. Bobb was born September 12, 1955.   (R. 89.) She has a high school education and completed two years of college and completed a degree in mental health applied sciences.  (R. 101.)  She has worked as a teacher's aid in a daycare and a substitute supervisor in a sheltered workshop for disabled adults.  She last worked December 15, 2002.  (R. 81-82.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized Bobb's testimony as follows:

> The claimant testified at the September 18, 2007 [hearing] that she was
> born on September 12, 1955 and that she is 52 years old. She is five feet,

2

two ½ inches tall and she weighs 197 pounds, down from her usual 214 pounds. She is married and lives with her husband in a mobile home; they have no dependent children. She has a high school education plus an Associates' Degree in applied science. She has past work experience working part-time with the handicapped at Starlight Industries and later as a full-time Day Care Aide.

The claimant testified that she is unable to work any longer because of diabetes, which she reported had been diagnosed earlier that year, in March 2007. It was under fair control, but she said that she had had some early foot neuropathy and irritable bowel syndrome for the past two or three years. She also had hypertension, which was also controlled with medication. She had some low back pain and arthritis in multiple joints. She also complained of anxiety and depression, as well as a benign, familial tremor in her hands and feet, which had started two years before. She has no drivers' license and has never driven a motor vehicle. She said she was hospitalized for her diabetes three time since 2007; this resulted in her being put on insulin. She uses a (prescribed) cane when she is out and about, and she takes medications, listed at Exhibit 12E, pp. 5 and 6, even though they make her tired. **No other adverse side effects from her medication were mentioned.**

The claimant next reported that she could walk less than one-half a block before becoming short of breath and experiencing low back pain. She can stand for just ten minutes before experiencing those same symptoms. She cannot bend over because she would have to hold onto something in order to get back up. She said her ability to push and pull was impaired, although she was able to reach overhead. She can sit for thirty minutes and then her legs will go numb. She can use her hands for fine and gross manipulation, and she can lift and carry ten pounds. She cannot climb even 12-13 steps. She has sleep difficulties some nights because of her nerves. She has no hobbies and she does not exercise. She cares for her own personal hygiene, occasionally with the help of her husband.

The claimant cooks and they both do the dishes. Her husband does most of the housecleaning, and the claimant does the laundry. She naps occasionally and she grocery shops with someone else. She watches television but does not read; she naps occasionally. They do not go to restaurants or movies, but her daughter and her grandchildren visit occasionally. She does not drink but she smokes two packages of cigarettes every day. When her blood sugar is up, she feels nauseated and

3

occasionally dizzy. This happens from once a day to once a month. She said that she has irritable bowel syndrome with constipation, bladder problems causing frequent urination, and chronic pulmonary disease with shortness of breath. She avoids temperature extremes. She recently ran out of her Xanax and had to go to the emergency room.

(R. 29-30.)(Emphasis in original.)

**Medical Evidence of Record.** The administrative law judge's decision fairly sets out the relevant medical evidence of record. This Report and Recommendation will only briefly summarize that evidence.

**Physical Impairments.**

Genesis Healthcare System. On April 23, 2001, plaintiff presented at the emergency room with complaints of coughing for over a week without improvement. She also reported that he blood sugars had been as high as 210. She was diagnosed with bronchitis. (R. 154-55.)

On July 16, 2003, Bobb presented at the emergency room with complaints of pain in her left shoulder and arm radiating into her hand. She reported that her fingers and hand had numbness. (R. 254-55.) X-rays of her cervical spine showed degenerative joint disease. On discharge, Bobb was diagnosed with cervical radiculopathy. (R. 256.)

On July 25, 2003, plaintiff was evaluated at the sleep disorder center by Dr. Thomas E. Rojewski for snoring and excessive daytime sleepiness. She reported awakening from night sleep unrefreshed. She reported that she frequently slept during the day. She was diagnosed with probable obstructive sleep apnea, atherosclerotic

cardiovascular disease, hypertension, diabetes, reactive airway disease, and morbid obesity. (R. 251-53.)

On August 22, 2003, plaintiff was admitted for an overnight polysomnographic recording for evaluation. Following the evaluation, she was diagnosed with mild obstructive sleep apnea and possible periodic limb movement disorder. She was instructed to return to the sleep disorders center for a repeat overnight poly-somnographic recording and nasal CPAP trial. (R. 248-49.)

A October 15, 2003 chest x-ray revealed no acute cardiopulmonary process. (R. 213.)

A December 29, 2003, MRI of the lumbar spine revealed severe degenerative disc disease with disc space narrowing at L5-S1. There was some mild degenerative disc disease at L4-5. There was no evidence of disc herniation or spinal stenosis. (R. 260.)

A December 30, 2003 DLCO showed mild diffusion defect. (R. 262-68).

On May 30, 2006, plaintiff was admitted to the hospital for hypoglycemia. (R. 400-03.) On July 28, 2006, plaintiff was admitted to the hospital for hypoglycemia. (R. 394-99.) On March 4, 2007, plaintiff was admitted to the hospital for nonketotic hyperosmolar coma, severe dehydration, and uncontrolled diabetes requiring insulin. (R. 389-93.)

Ronald Kalchik, D.O. On April 23, 2004, Dr. Kalchik performed an echocardiogram. The study was technically difficult and limited as a result of plaintiff's

5

obesity. There appeared to be mild left ventricular hypertrophy. Systolic function appeared normal. There was trace tricuspid insufficiency. (R. 161-62.)

A July 22, 2003 x-ray of plaintiff's chest revealed that plaintiff's heart size and pulmonary vasculature were unremarkable. There were no acute consolidative infiltrates, pleural effusions, or pneumothorax seen. No acute abnormality was detected. (R. 214.)

Stephany K. Moore, M.D. On October 9, 2003, Dr. Moore examined plaintiff for complaints of chest pain. She reported experiencing intermittent chest pain when she exerts herself that dissipated with rest. She had pressure in the middle of her chest and noticed increasing dyspnea on exertion and orthopnea. Dr. Moore noted that Bobb had recently been diagnosed with sleep apnea. Dr. Moore recommended that plaintiff undergo a left heart catheterization. She diagnosed Bobb with angina, hypertension, hyperlipidemia, diabetes, obesity, and nicotine abuse. (R. 241-42.)

On October 29, 2003, Dr. Moore examined plaintiff for follow up following a left heart catheterization. Bobb denied have chest pain, paroxysmal nocturnal dyspnea, or orthopnea. She was diagnosed with nonobstructive coronary artery disease. Dr. Moore recommended aggressive risk factor modification, which included weight loss, exercise, and smoking cessation. She recommended that Bobb discontinue her blood pressure medication. Plaintiff was instructed to continue to be compliant with CPAP machine. She deferred management of Bobb's diabetes to Dr. Flarey. (R. 201-02.)

6

E.N Perencevich, D.O. On January 27, 2004, Dr. Perencevich reviewed the medical evidence of record and completed a physical residual functional capacity assessment for the Bureau of Disability Determination. (R. 271-76.) Dr. Perencevich concluded that plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. She could stand and/or walk for about 6 hours in an 8-hour day. She was unlimited in her ability to push and/or pull. Dr. Perencevich further opined that plaintiff could occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds. She also could occasionally stoop, kneel, crouch, or crawl. She was able to balance frequently. She should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, noise, and fumes, odors, dust, gases, and poor ventilation. She should avoid all exposure to hazards.

On September 2, 2004, Paul T. Heban. M.D. reviewed the evidence of record and affirmed the assessment of Dr. Perencevich. (R. 276.)

Paul T. Heban, M.D. On October 2, 2004, Dr. Heban reviewed the medical evidence of record and completed a physical residual functional capacity assessment. Dr. Heban opined that plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds. Plaintiff could stand and/or walk about 6 hours in an 8-hour day. Plaintiff could also sit for about 6 hours in an 8-hour day. She was unlimited in her ability to push and/or pull. Dr. Heban also opined that plaintiff could occasionally climb ramps and stairs, but she could never climb ladders, ropes, or scaffolds. She also could occasionally stoop, kneel, crouch, or crawl. Because of her chronic obstructive

pulmonary disease, Bobb should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (R. 368-76.)

On March 21, 2005, Rebecca R. Neiger reviewed the medical record and affirmed Dr. Heban's findings. (R. 376.)

D. Quattrone, D.P.M. On January 3, 2005, Dr. Quattrone, a podiatrist, provided a teledication report to the agency. Dr. Quattrone reported that an MRI showed advanced degenerative arthrosis of the ankle joint and subtalar joint in the rear foot and tenosynovitis of a tendon. He opined that plaintiff could not perform work being on her feet or sitting down unless she was permitted to walk around most of the time. (R. 378-79.)

A.K. Bhaiji, M.D. On February 15, 2005, Dr. Bhaiji evaluated plaintiff for the Bureau of Disability Determination. Plaintiff had a normal gait, and she was able to get on and off the examining table without difficulty. She could heel to toe walk. Range of motion in her extremities and cervical spine were normal. The dorosolumbar motion was slightly reduced. Bilateral straight leg raising was normal. There were no neurological defects, no strength deficits, and no atrophy. (R. 380-84.) EMG and nerve conduction studies of the lower extremities showed mild sensory neuropathy. (R. 387.)

X-rays of plaintiff's cervical and thoracic spine taken on June 9, 2005 showed degenerative changes. (R. 443-44.)

Robert J. Thompson, M.D. On October 7, 2005, Dr. Thompson evaluated plaintiff based on her complaints of having "the shakes." She reported experiencing

tremulousness for some time, but she could not state exactly how long it had been occurring. Dr. Thompson opined that she could be suffering from mild familial essential tremor. There was no evidence of Parkinson's disease, multiple sclerosis, or other serious neuropathology. (R. 432-33.)

David L. Klein, M.D. Based on his October 18, 2006 examination, Dr. Klein concluded that plaintiff could only stand and/or walk for 2 hours in an 8-hour day. She could sit for 6 hours in an 8-hour day. She could frequently lift and/or carry up to 5 pounds. She could occasionally lift and/or carry up to 10 pounds. She was moderately limited in reaching and handling. She was markedly limited in her ability to perform repetitive foot movements. She was extremely limited in her abilities to push, pull, or bend. Dr. Klein opined that plaintiff was unemployable. (R. 434-35.)

Dr. Anthony Flarey. Treatment notes from February 3, 2006 through March 16, 2007 were submitted by Dr. Flarey. (R. 466-96.)

**Psychological Impairments.**

Tambrey Delbert, Ph.D., LPCC. On June 30, 2003, Dr. Delbert examined plaintiff and completed a mental functional capacity assessment. Dr. Delbert opined that plaintiff could remember work-like procedures, and she could understand, remember, and carry out detailed instructions. She did not have significant limitations in maintaining attention and concentration for extended periods or in working near others. Bobb was markedly limited in her abilities to complete a normal workday or workweek without psychologically based interruptions and to perform at a consistent

pace without an unreasonable amount of rest periods. Dr. Delbert concluded that Bobb was employable. (R. 333-34.)

On October 24, 2006, Dr. Delbert examined plaintiff and completed another mental functional capacity assessment. (R. 436-42.) He concluded that although Bobb had some psychological difficulties related to depression and anxiety, her deteriorating health and chronic pain appeared to be the primary hindrance in sustaining employment. (R. 442.)

Caroline T. Lewin, Ph.D. On October 27, 2003, Dr. Lewin completed a psychiatric review technique and a mental residual functional capacity assessment at the request of Bureau of Disability Determination. (R. 217-33.) Dr. Lewin concluded that plaintiff had an adjustment disorder with depressed mood, undifferentiated somatoform disorder, and a personality disorder, not otherwise specified. (R. 221, 224-25.) Bobb had only mild limitations in her daily living and in maintaining social functioning. She had moderate difficulties in maintaining concentration, persistence or pace. She had episodes of decompensation. (R. 228.)

Dr. Lewin concluded that plaintiff was not significantly limited with respect to understanding and memory. She had moderate limitations in her abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Lewin also opined that plaintiff

was markedly limited in her abilities to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. She was moderately limited in her ability to respond appropriately to changes in the work setting.  (R. 231-32.)

Dr. Lewin noted that plaintiff returned to work after the previous decision denying her benefits, and this job ended because the program ended rather than because of her disability. During the most recent psychological examination, Bobb was able to recall 7 digits forward, and her ability to carry out instructions was intact for one and two step directions. During serial tasks, Bobb was able to concentrate adequately for general tasks. Dr. Lewin concluded that Bobb would be able to handle basic instructions and one to two step tasks in less than highly stressful situations or less than time-pressured environments and with superficial interactions. (R. 233.)

Lee Howard, Ph.D. On August 26, 2004, Dr. Howard, a psychologist, examined Bobb. Dr. Howard described Bobb's social presentation, mood, and affect as normal. She denied suicidal ideation. She did not have hallucinations, paranoid ideation, or psychosis. Plaintiff was oriented in three spheres, and her memory was intact.  Dr. Howard assigned a Global Assessment of Functioning ("GAF") of 80, which indicates absent or minimal symptoms. Dr. Howard opined Bobb could perform simple, moderate, and low complex tasks. Her depression was mild and controlled. Bobb could perform work at a moderately high stress range. (R. 345-53.)

11

<u>Paul T. Heban, M.D.</u> On September 2, 2004, Dr. Heban reviewed the medical evidence of record and completed a psychiatric review technique. Dr. Heban determined that plaintiff had a depressive disorder, not otherwise specified, currently in partial remission. Bobb had only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Heban noted that plaintiff had presented at the consultative evaluation with normal mood and affect. She had low energy, variable memory, and monthly crying spells. Zoloft provided her with some improvement in her symptoms. Dr. Heban concluded that plaintiff's psychiatric symptoms were not so severe as to restrict her ability to work. (R. 355-67.)

On March 16, 2005, Todd E. Finnerty, Psy.D. reviewed the evidence of record and affirmed the assessment of Dr. Heban. (R. 355.)

**<u>Administrative Law Judge's Findings</u>.**

1.     The claimant has not engaged in any substantial gainful activity since April 16, 2004, the date of her current application (20 CFR 416.920(b) and 416.971 *et seq.).*

2.     The claimant has the following combination of medically determinable impairments: non-insulin dependent diabetes mellitus, hypertension, degenerative joint disease, arthritis, nonsevere anxiety/depression, alleged sleep apnea, and mild sensory neuropathy (20 CFR 416.920(c)).

3.     The claimant does not have any impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926.)

4.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work.

5.     The claimant is unable to perform any of her past relevant work (20 CFR 416.965).

6.     The claimant was born on September 12, 1955 and she was 47 years old, which is defined as a younger individual, on the date her application was filed. She is now closely approaching advanced age, at age 52 (20 CFR 416.963).

7.     The claimant has a high school education plus an Associate's Degree; she is able to communicate in English (20 CFR 416.964).

8.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(C) and 416.966).

10.    The claimant has not been under a disability, as defined in the Social Security Act, at any time since April 16, 2004, the date her application was filed (20 CFR 416.920(g)).

(R. 23-32.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is

"'more than a mere scintilla.'" *Id.* *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**<u>Plaintiff's Arguments</u>.** Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge erred when he concluded that plaintiff had the residual functional capacity to perform light work because failed to credit the opinions of Dr. Klein and Dr. Delbert.

- The administrative law judge erred when he concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of symptoms were not entirely credible.

**<u>Analysis</u>.**

<u>Treating Doctors' Opinions</u>. Plaintiff argues that the Administrative Law Judge erred in rejecting the opinions of Dr. Klein and Dr. Delbert that plaintiff was disabled.

<u>Treating Doctor: Legal Standard</u>.  A treating doctor's opinion[1] on the issue of disability is entitled to greater weight than that of a physician who has examined plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record.  20 C.F.R. § 404.1527(d)(1).  *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983).  The Commissioner's regulations explain that Social Security generally gives more weight to a treating doctors' opinions because treators are usually "most able to provide a detailed, longitudinal picture" of the claimant's medical impairments. 20 C.F.R. § 404.1527(d)(2).  When the treating doctor's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the Commissioner "will give it controlling weight. " *Id.*

---

[1]The Commissioner's regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2). Treating sources often express more than one medical opinion, including "at least one diagnosis, a prognosis and an opinion about what the individual can still do." SSR 96-2p, 1996 WL 374188, at *2. When an administrative law judge fails to give a good reason for rejecting a treator's medical opinion, remand is required unless the failure does not ultimately affect the decision, *i.e.,* the error is *de minimus. Wilson,* 378 F.3d at 547. So reversible error is not committed where the treator's opinion "is patently deficient that the Commissioner could not possibly credit it;" the administrative law judge's findings credit the treator's opinion or makes findings consistent with it; or the decision meets the goal of 20 C.F.R. § 1527(d)(2) but does not technically meet all its requirements. *Id.*

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable."  42 U.S.C. §423(d)(1)(A). Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence.   *Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975).  20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b), and 404.1527(a)(1)[2].

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."  20 C.F.R. § 404.1527(d)(1).  When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case

_____

[2]Section 404.157(a)(1) provides:
You can only be found disabled if you are unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. See §404.1505. Your impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. See §404.1508.

16

record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).  In determining the weight to assign a treating source's opinion, the Commissioner considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision.  *Id.*  Subject to these guidelines, the Commissioner is the one responsible for determining whether a claimant is disabled.  20 C.F.R. § 404.1527(e)(1).

Social Security Ruling 96-2p provides that "[c]ontrolling weight cannot be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."  Consequently, the decision-maker must have "an understanding of the clinical signs and laboratory findings and what they signify."  *Id.*  When the treating source's opinion "is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight . . . ."  The Commissioner's regulations further provide that the longer a doctor has treated the claimant, the greater weight the Commissioner will give his or her medical opinion.  When the doctor has treated the claimant long enough "to have obtained a longitudinal picture of your impairment, we will give the source's

17

[opinion] more weight than we would give it if it were from a non-treating source." 20 C.F.R. §404.1527(d)(2)(I).

The Commissioner has issued a policy statement about how to assess treating sources' medical opinions.  Social Security Ruling 96-2p.  It emphasizes:

1. A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2. Controlling weight may be given only in appropriate circumstances to medical opinions, *i.e.*, opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3. Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

4. Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5. The judgment whether a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6. If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; *i.e.*, it must be adopted.

7. A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected.  It may still be entitled to deference and be adopted by the adjudicator.

Even when the treating source's opinion is not controlling, it may carry sufficient weight to be adopted by the Commissioner:

18

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p.

The case law is consistent with the principals set out in Social Security Ruling 96-2p. A broad conclusory statement of a treating physician that his patient is disabled is not controlling. *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). For the treating physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(d)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). Even when the Commissioner determines not to give a treator's opinion controlling weight, the decision-maker must evaluate the treator's opinion using the factors set out in 20 C.F.R. § 404.1527(d)(2). *Wilson,* 378 F.3d at 544; *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir. 2009). There remains a rebuttable

presumption that the treating physician's opinion "is entitled to great deference." *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242 (6th Cir. 2007); *Hensley,* above. The Commissioner makes the final decision on the ultimate issue of disability. *Warner v. Commissioner of Social Security,* 375 F.3d at 390; *Walker v. Secretary of Health & Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

Treating Doctor: Discussion. Plaintiff argues that the administrative law judge erred when he determined that plaintiff had the residual functional capacity to perform light work because he did not adopt the opinions of Dr. Klein and Dr. Delbert. Dr. Klein, based on his October 2006 examination of Bobb, opined that she could only stand and/or walk for 2 hours in an 8-hour day and sit 6 hours in an 8-hour day. She could frequently lift and/or carry only up to 5 pounds. She could occasionally lift and/or carry up to 10 pounds. Dr. Klein concluded that plaintiff was unemployable.

The administrative law judge relied on substantial evidence that was inconsistent with Dr. Klein's opinion that plaintiff was disabled:

> Specifically, I agree with the conclusions of the State Agency medical examiner, Dr. Heban, who noted that the claimant had previously (in 1999) been found by an Administrative Law Judge to have no physical limitations, although a subsequent pulmonary function study in 2003 showed an FVC of 65% and an FEV1 at 56% of predicted. An echocardiogram in April 2003 yielded an ejection fraction of 65-70%. At five feet, two inches tall and 241 pounds, the claimant has a body mass index (BMI) of 44. Her oxygen saturation was 97% at baseline on August 30, 2003. Furthermore, a September 2003 examination showed no jugular

20

> venous distention, her lungs were clear, and her heart tones were regular.
> A chest x-ray on October 13, 2003 was unremarkable. On October 23, 2003,
> a cardiac catheterization showed an ejection fraction of 55% with non-
> significant coronary artery disease. An MRI of her lumbar spine showed
> severe degenerative dis disease at L5-S1, but there was no spinal stenosis.
> A DLCO was 77% on December 30, 2003. Her creatinine on February 17,
> 2004 was 0.7. Finally, in an office visit in May 2004, she reportedly walked
> with a normal gait and had normal speech and function. There was no
> evidence of end organ damage due to her diabetes or high blood pressure
> –see Exhibit 19F).

(R. 27-28.) Consequently, the administrative law judge was not required to adopt the
opinion of Dr. Klein.

Dr. Delbert was an examining psychologist, rather than a treatment provider. In
June 2003, Dr. Delbert concluded that plaintiff retained the mental residual functional
capacity to perform work. In October 2006, Dr. Delbert concluded that plaintiff's
physical condition, rather than her mental condition, prevented her from working. As a
psychologist, however, Dr. Delbert's opinion regarding Bobb's physical impairments
was not entitled to any weight whatsoever. The administrative law judge relied on the
opinion of Dr. Flynn, the State Agency psychologist, to determine that plaintiff's mental
impairments of depression and anxiety did not cause more than a minimal limitation in
her ability to perform basic mental work activities. Dr. Flynn noted that plaintiff's
symptoms improved with Zoloft and that her activities of daily living were full.  The
opinions of Dr. Heban and Dr. Flynn constitute substantial evidence that supports the
administrative law judge's conclusion that plaintiff could perform light work. The

administrative law judge did not err by relying on Dr. Flynn's assessment rather than Dr. Delbert's.

Credibility Determinations: Controlling Law. Pain is an elusive phenomena. Ultimately, no one can say with certainty whether another person's subjectively disabling pain precludes all substantial gainful employment.  The Social Security Act requires that the claimant establish that he is disabled.  Under the Act, a "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §423(d)(1)(A) (emphasis added).

Under the provisions of 42 U.S.C. §423(d)(5)(A):

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.  Objective medical evidence of pain or other symptoms established by medically acceptable clinical or other laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

The Commissioner's regulations provide:

> (a) *General*.  In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  By objective medical evidence, we mean medical signs and laboratory findings as defined in §404.1528(b) and (c).  By other evidence, we mean the kinds of evidence described in §§404.1512(b)(2) through (6) and 404.1513(b)(1), (4), and (5) and (e).  These include statements or reports from you, your treating or examining physician or psychologist, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work.  We will consider all of your statements about your symptoms, such as pain, and any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work.  However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.  In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you.  (Section 404.1527 explains how we consider opinions of your treating source and other medical opinions on the existence and severity of your symptoms, such as pain.)  We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.

20 C.F.R. §404.1529(a).

In *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986) the Sixth Circuit established the following test for evaluating complaints of disabling pain.  First, the Court must determine "whether there is objective medical evidence of an underlying medical condition."  If so, the Court must then

> examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan*, 801 F.2d at 853.  Any "credibility determinations with respect to subjective complaints of pain rest with the ALJ."  *Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987).

Credibility Determination: Discussion.  The administrative law judge concluded that the objective evidence did not fully support plaintiff's allegations of disability:

> For example, the mental residual functional capacity assessment at Exhibit C27F is at odds with the psychologist's narrative at Exhibit C28F. Dr. Thompson ruled out Parkinson's disease (Exhibit C25F), and the claimant was "feeling very well" on March 7, 2007 (Exhibit C23F, p.1). She told the consultative examiner, Dr. Bhanji, on February 17, 2005, that her blood sugars were "fairly well controlled" (Exhibit C21F). There were also multiple inconsistencies in the record. For example, the claimant testified that she never drives, but per Exhibit C38F, p. 4, she drove herself to and from the emergency room on August 26, 2007.

(R. 30.) The administrative law judge also noted that plaintiff did not consistently maintain her diabetic diet, nor did she stop smoking or lose weight as instructed. The only adverse side effects to her medications mentioned by plaintiff was that they made her tired. The administrative law judge also properly considered her reported daily

activities. As a result, there is substantial evidence supporting the administrative law judge's credibility determination of Bobb's allegations of disability.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.**  It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


       s/Mark R.  Abel
       United States Magistrate Judge